PETER F. NEGRI and ELIZABETH NEGRI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Negri v. Commissioner
Docket No. 26374-90
United States Tax Court
T.C. Memo 1993-261; 1993 Tax Ct. Memo LEXIS 261; 65 T.C.M. (CCH) 2953; June 14, 1993, Filed *261 Decision will be entered for respondent. For petitioner: Cindy V. Schlaefer. For respondent: Halvor Adams. WOLFE
WOLFE
MEMORANDUM OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] By notice of deficiency dated August 24, 1990, respondent determined a deficiency of $ 7,790 in petitioners' 1985 Federal income tax. After concessions by petitioners, the issues for our decision are: (1) Whether respondent correctly determined that interest in the amount of $ 16,635 is includable in petitioners' income; and (2) if the interest properly is includable in petitioners' income, whether petitioners are entitled to offset the interest income against construction period interest expense. This case was submitted fully stipulated, and the stipulations *262 of facts and attached exhibits are incorporated by this reference. Petitioners resided in Garden City, New York, when they filed the petition in this case. Throughout 1984 and 1985, Peter F. Negri (petitioner) owned all of the 2,500 shares of $ 100 par value common stock, and Frank Negri, petitioner's father owned all of the 12,500 shares of convertible $ 100 par value preferred stock of Jamaica Bearings Co., Inc. (Jamaica). Because each share of common and each share of preferred stock was entitled to one vote during those years, petitioner had 2,500 votes and Frank Negri had 12,500 votes. In June 1984, at petitioner's request, the Nassau County New York Industrial Development Agency (Nassau) undertook to finance the construction of a building and the acquisition and installation of new machinery and equipment (the project) for use by petitioner and Jamaica. Nassau obtained funds for use on the project by issuing a bond in the face amount of $ 1.6 million (the bond) to Barclays Bank of New York, N.A. (Barclays). Nassau agreed to issue, and Barclays agreed to purchase, the bond pursuant to an agreement dated as of June 1, 1984 (bond purchase agreement). Petitioner and Jamaica *263 unconditionally guaranteed the payments due on the bond by an agreement with Barclays dated as of June 1, 1984. Section 4.1 of the bond purchase agreement required Barclays to establish an account referred to as the project account and to deposit the amount paid for the bond into that account. Barclays deposited the amount paid for the bond into the project account during 1984 in accordance with the terms of the bond purchase agreement. Petitioner's taxpayer identification number is the taxpayer identification number on information returns filed by Barclays to report the interest income earned on the funds in the project account. Although Nassau held legal title to the project, it entered into an installment sale agreement (sale agreement) dated as of June 1, 1984, to sell the project to petitioner and mortgaged its interest in the project to Barclays as security for the bond by agreement also dated as of June 1, 1984 (the mortgage). As stated in the mortgage, the execution of the sale agreement made petitioner the "economic and beneficial and equitable owner of the Project" and during the year at issue petitioner was the owner of the project for Federal income tax purposes. *264 Nassau assigned substantially all of its rights under the sale agreement to Barclays as security for the bond by an assignment dated as of June 1, 1984. Petitioner leased the project to Jamaica pursuant to a lease entered into as of June 1, 1984. Petitioner assigned substantially all of his rights under the lease to Barclays as security for the bond by an assignment dated as of June 1, 1984. Petitioner's payment obligations to Nassau under the sale agreement were defined in a promissory note in the principal amount of $ 1.6 million dated as of June 1, 1984 (the note). By design, petitioner's payment obligations under the note corresponded to Nassau's payment obligations to Barclays under the bond. The note stated that "it is intended that the payments of principal of and any premium and interest on this Note will be sufficient to enable [Nassau] to pay when due the principal of and any premium and interest on [the Bond]." The note stated that all payments with respect to the principal of or interest on the bond discharged petitioner's indebtedness on the note pro tanto. Petitioner executed the note on July 25, 1984. In the notice of deficiency, respondent determined an increase *265 in petitioners' interest income in the amount of $ 16,365. The interest income at issue was earned during 1985 on, and was deposited during 1985 into, the project account. Petitioner contends that the project account was opened in the name of Nassau, that petitioner's name was for reference purposes only, and that the project account erroneously bore petitioner's taxpayer identification number. Petitioner further asserts that the Internal Revenue Code recognizes that income earned on accounts such as the project account is the income of the tax-exempt governmental agency and not the ultimate private borrower. Petitioners have the burden of proof. Rule 142(a). Pursuant to section 4.8 of the sale agreement, petitioner was given the right, limited by specific enumerated clauses, to direct investment of the funds in the project account. Pursuant to section 4.3 of the sale agreement, Nassau authorized and directed Barclays to disburse from the project account only for the payment or reimbursement of petitioner for the payment of the numerous costs of the project. This section further provided that all moneys or any unliquidated investments remaining in the project account on the *266 completion date of the project and after payment in full of project costs, shall be applied to the prepayment of the principal of the bond in accordance with the terms of the sale agreement and the bond. Under the sale agreement, any amounts remaining in the project account, after payment in full of the bond, and the fees, charges, and expenses of Nassau, shall belong to and be paid to petitioner as overpayment on the note. Also, under section 4.6 of the sale agreement petitioner agreed to complete the project with his own funds if the funds in the project account were not sufficient to pay the costs of the project. Section 61(a)(4) provides that interest is includable in gross income. There is no dispute over the amount of interest earned in the project account during the year at issue. Petitioner contends that the funds in the project account were not his and that he therefore is not taxable on the interest earned on the funds. Petitioner's assertions that his name was mentioned on the project account only for reference purposes and that his taxpayer identification number was mistakenly set forth are unpersuasive and without foundation in the record. Under the long-standing *267 principle enunciated in , and its progeny, income is taxed to its true owner when he earns it or derives it from property he owns. Determining the ownership of property is a question of fact. . The actual control over the property and the enjoyment of profits from such property are of paramount importance in establishing ownership. , affd. . Based upon petitioner's control over the project account under the various interrelated agreements, petitioner was the owner of the account and the incidence of taxation of the interest earned thereon cannot be shifted to Nassau. On this record, we conclude that the interest earned in the year at issue on the funds in the project account is includable in petitioner's gross income for that year. Under the interrelated agreements, petitioner controlled the funds on deposit in the project account. The income in the project account was initially disbursed to petitioner for payment *268 of costs related to completion of the project. By agreement, petitioner owned the project and was obligated to complete its construction. Furthermore, petitioner had the right to direct investment of the funds in the project account, and he was the individual who bore the benefits and burdens of his investment decisions. Any funds remaining in the project account after completion of the project were to be applied to reduce his obligation to repay the bond or, if the bond had already been fully paid, were to be paid to petitioner as an overpayment on the note. If the funds remaining in the project account were insufficient to pay the project costs, petitioner was required to pay the remaining project costs. Since petitioner had the ultimate control of the funds in the project account, and he bore the benefits and burdens of that control, he is taxable on the interest earned thereon. Petitioner's assertion, that the Internal Revenue Code mandates that income earned on accounts such as the project account is taxable to the tax-exempt governmental entity, also is unpersuasive. Petitioner cites section 103(c) as the basis for this proposition. Section 103(c) concerns arbitrage *269 bonds and the taxability of interest paid on proceeds of State or local bonds. Nassau did not invest the project account in high-yield securities to produce an arbitrage profit. Rather, this money was left in the account at the disposal of the developer for use in the project. Plainly section 103(c) is not applicable to the issue before this Court. In the alternative, petitioner contends that a deduction for interest expense is proper to the extent that the loan proceeds were utilized to produce interest income. Respondent contends that there is no authority for petitioner's position, and that petitioner is precluded from deducting construction period interest expense under section 189. Respondent asserts that petitioner is required to capitalize and amortize construction period interest expense over 10 years pursuant to section 189. Deductions are a matter of legislative grace, and taxpayers have the burden of establishing that they are entitled to deductions claimed on their return. . We agree with respondent in rejecting petitioner's argument for offsetting interest income from the *270 account against interest expenses otherwise not currently deductible. Also we agree with respondent's alternative argument with respect to section 189. In general, section 189 requires the amortization of construction period interest and taxes over a 10-year period. [2] Pursuant to section 189(e)(1), The term "real property construction period interest and taxes" means all -- (A) interest paid or accrued on indebtedness incurred or continued to acquire, construct, or carry real property, and (B) real property taxes, to the extent such interest and taxes are attributable to the construction period for such property and would be allowable as a deduction under this chapter for the taxable year in which paid or accrued (determined without regard to this section). * * *
Since the interest expense at issue here was paid or accrued on indebtedness incurred or continued to acquire, construct, or carry real property, it is real property construction period interest. Low-income housing was excluded from the amortization requirements, as was real property acquired, constructed, or carried if such property was not or could not reasonably be expected to be held in a trade or *271 business or in an activity conducted for profit. See sec. 189(d)(1) and (2). The exceptions to section 189 are inapplicable, and under the terms of that section petitioner must amortize construction period interest expense over a 10-year period. There is no authority or apparent reason for allowing petitioner to avoid the requirements of section 189 by deducting his construction period interest expense or offsetting his interest income against construction period interest expense. While petitioner might have organized his financial arrangements somewhat differently and perhaps more to his own benefit, we only can consider the transaction as petitioner has structured it. . To *272 reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax year at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 189 was repealed by the Tax Reform Act of 1986, and is inapplicable to costs incurred after December 31, 1986, in taxable years ending after such date. Pub. L. 99-514, sec. 803(b)(1) and (d)(1), 100 Stat. 2085, 2355-2356.↩